# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

August 3, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

STELLA L. STARKS,                          )
                                           )
    Plaintiff/Appellant,            )
                                           )
VS.                                        )
                                           )     Robertson Circuit
SAMUEL J. BROWNING,                        )     No. 7342
JOSEPH F. BROWNING, and                    )
MARY BROWNING,                             )     Appeal No.
                                           )     01A01-9801-CV-00038
    Defendants,                     )
                                           )
BART DURHAM INJURY AND                     )
ACCIDENT LAW OFFICES,                      )
                                           )
    Appellee.                       )

## APPEAL FROM THE CIRCUIT COURT FOR ROBERTSON COUNTY
### AT SPRINGFIELD, TENNESSEE

### THE HONORABLE JOHN H. GASAWAY, III, JUDGE

For Stella L. Starks:

Steve R. Darnell
Bateman, Bateman & Darnell
Clarksville, Tennessee

For Bart Durham Injury & Accident
Law Offices:

Robert L. Whitaker
Nashville, Tennessee

# AFFIRMED IN PART; REVERSED IN PART;
# AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves a law firm's efforts to enforce a statutory attorney's lien on the proceeds of a post-verdict personal injury settlement. After the law firm withdrew from representing the plaintiff because of a dispute arising from the settlement, the Circuit Court for Robertson County, the court where the underlying personal injury action had been tried, granted the law firm's motion for a lien on the settlement proceeds for its fee and costs advanced on the plaintiff's behalf. Thereafter, the trial court granted the law firm's motion to execute on the lien and directed the plaintiff to pay her former law firm $51,091.99. On this appeal, the plaintiff asserts that the trial court erred by directing her to pay her former law firm because the lien was not properly perfected and because the procedure followed by the trial court did not permit her to assert her available claims and defenses against her former law firm. While we have determined that the law firm properly perfected its lien, we find that the trial court did not have the authority to adjudicate the fee dispute between the law firm and its former client. Accordingly, we reverse the portion of the trial court's order granting the motion for execution of the attorney's lien.

## I.

On October 8, 1994, Stella Starks was waiting to make a left turn at the intersection of Memorial Boulevard and Pawnee Drive in Springfield when she was struck head-on by a pick-up truck driven by Samuel Browning. Mr. Browning, a minor, was intoxicated at the time because he had consumed four or five beers at a cookout at Tim Farmer's home. Ms. Starks retained the Bart Durham Injury and Accident Law Offices ("Bart Durham Law Offices") to represent her on the basis of a one-third contingency fee plus reimbursement of expenses. In April 1995, the Bart Durham Law Offices filed suit in the Circuit Court for Robertson County against both Mr. Browning and his parents who were registered co-owners of Mr. Browning's pick-up truck. Later, in February 1996, the Bart Durham Law Offices filed an amended complaint naming Tim Farmer and his parents as additional defendants.

In January 1997, the trial court granted Mr. Farmer's and his parents' motion for summary judgment and dismissed them from the case.[1] In August 1997, following a three-day trial, a jury returned a verdict against Mr. Browning alone for $281,000 in compensatory damages and for $500 in punitive damages. On the same day the jury returned its verdict, Ms. Starks authorized the Bart Durham Law Offices to accept a post-verdict settlement offer of $110,000.[2] Twenty minutes later she attempted to withdraw her acceptance; however, the Bart Durham Law Offices had already communicated her acceptance to opposing counsel. Thus, Ms. Starks' lawyer told her that her earlier acceptance had made the settlement a "done deal." Nevertheless, on the day following the verdict, Ms. Browning talked with Bart Durham personally by telephone and rescinded her acceptance of the offer and retracted the firm's authority to settle the suit on her behalf.

On September 4, 1997, the trial court entered a judgment order embodying the jury's verdict against Mr. Browning. On the same day, the Bart Durham Law Offices moved to withdraw as counsel for Ms. Starks and to assert a statutory attorney's lien on the settlement proceeds. It also filed a "motion" seeking a declaratory judgment concerning the validity of the settlement agreement. These motions were heard on the same day they were filed.[3] Thereafter, on October 7, 1997, the trial court entered an order permitting the Bart Durham Law Offices to withdraw as Ms. Starks' counsel and declaring that the Bart Durham Law Offices had a $51,091.99 lien "on any recovery, whether by settlement, verdict, levy, garnishment, execution or otherwise, that Plaintiff receives in this matter or any other action predicated on the same cause."

Ms. Starks retained a new lawyer following the September 4, 1997 hearing. The new lawyer informed the Bart Durham Law Offices that he believed that its

---

[1]At the same time the trial court granted the Farmers' motion for summary judgment, it denied the Brownings' motion for summary judgment with regard to Ms. Starks' family purpose claim. This court denied the Brownings' Tenn. R. App. P. 10 application for an extraordinary appeal from these decisions. *See Starks v. Browning*, No. 01A01-9704-CV-00151 (Tenn. Ct. App. Apr. 11, 1997).

[2]While the jury was deliberating on the amount of the punitive damage award, Mr. Browning and his parents offered to settle the case for $110,00 – $100,000 to be paid by Mr. Browning's insurance company and $10,000 to be paid by Mr. Browning's parents. The lawyer representing Ms. Starks did not accept the offer until after the trial had concluded.

[3]While the certificate of service on these motions indicates that copies were mailed to Ms. Starks on August 29, 1997, the record contains no indication that Ms. Starks was present at the September 4, 1997 hearing.

representation of Ms. Starks fell below the standard of care reasonably expected of competent attorneys.[4] He also informed the Bart Durham Law Offices that he was holding $114,157.75 in settlement checks and suggested that an amount equal to the amount being claimed by the Bart Durham Law Offices be held in escrow pending the resolution of the malpractice claims. Thereafter, on November 13, 1997, Ms. Starks filed a malpractice action in the Circuit Court for Robertson County against the Bart Durham Law Offices and the individual lawyer who had represented her at trial.[5]

On November 17, 1997, the Bart Durham Law Offices filed a "motion" seeking "execution" of the October 7, 1997 order. One week later, Ms. Starks requested the trial court to find that its October 7, 1997 order was "ineffective." Following a hearing, the trial court entered two orders on December 18, 1997. The first order denied Ms. Starks' motion to set aside its October 7, 1997 order, and the second order granted the Bart Durham Law Offices' motion for execution of the October 7, 1997 order. The second order also stated, in part, that "the amount of Fifty-One Thousand Ninety-One and 99/100 Dollars ($51,091.99) which represents Bart Durham Injury & Accident Law Offices court approved fees and expenses be deposited with the Clerk of the Court by Steve Darnell, Esquire forthwith."

Ms. Starks has appealed from the order directing her to pay the Bart Durham Law Offices $51,091.99. After filing its brief with this court, the Bart Durham Law Offices filed a motion pursuant to Tenn. R. App. P. 19(b) and (e) to be added as an appellee in this case since it was a real party in interest with regard to the disputed $51,091.99. This court granted the motion on September 16, 1998.

## II.

_____

[4]The malpractice claim was based on allegations that the Bart Durham Law Offices induced Ms. Starks to accept the $110,000 settlement offer by telling her that the $281,000 judgment against Mr. Browning was dischargeable in bankruptcy when it should have known that the judgment was not dischargeable.

[5]See Starks v. Durham, Robertson Cir. No. 8740. The Bart Durham Law Offices later filed an answer denying that it had committed legal malpractice and also filed a third-party contribution and indemnity claim against Ms. Starks' new lawyer asserting that he had negligently failed to pursue an appeal from the January 1997 summary judgment dismissing Tim Farmer and his parents as defendants. The trial court granted a summary judgment dismissing the third-party claim, and this decision is currently the subject of a separate appeal recently argued before a panel from the Eastern Section of this Court. See Starks v. Durham, No. 01A01-9808-CV-00453.

Ms. Starks asserts that there are two reasons the order directing her to pay the Bart Durham Law Offices $51.091.99 cannot stand. First, she insists that the October 7, 1997 order could not have created a valid attorney's lien for the Bart Durham Law Offices because the lien is not noted in the September 4, 1997 judgment against Mr. Browning. Second, she argues that the trial court should not have proceeded to adjudicate the Bart Durham Law Offices' right to recover a fee from her.

## A.

The relationship between a client and an attorney is essentially contractual. *See Alexander v. Inman*, 974 S.W.2d 689, 694 (Tenn. 1998); *In re Ellis*, 822 S.W.2d 602, 607 (Tenn. Ct. App. 1991). In its most basic terms, this contract involves the exchange of competent legal services in return for an agreement to pay a reasonable fee. The attorney is obligated to exercise the utmost good faith in the discharge of his or her duties to represent the client. *See Crawford v. Logan*, 656 S.W.2d 360, 364 (Tenn. 1983); *Fitch v. Midland Bank & Trust* Co., 737 S.W.2d 785, 789 (Tenn. Ct. App. 1987). If the attorney discharges his or her duties appropriately, he or she is entitled to the reasonable, agreed-upon compensation without regard to the actual benefit the services might have been to the client. *See Spofford v. Rose*, 145 Tenn. 583, 611, 237 S.W. 68, 76 (1922); *Bills v. Polk*, 72 Tenn. 494, 496 (1880); *Adams v. Mellen*, 618 S.W.2d 485, 488 (Tenn. Ct. App. 1981).

The courts may decline to enforce an attorney's fee contract only (1) when the attorney did not negotiate the contract in good faith, *see Alexander v. Inman*, 974 S.W.2d at 693-94, (2) when the contract provides for an unreasonable fee, *see White v. McBride*, 937 S.W.2d 796, 800-01 (Tenn. 1996), or (3) when the attorney has otherwise breached his or her fiduciary obligations to the client and this breach has prejudiced the client's interests. See *Crawford v. Logan*, 656 S.W.2d at 365; *Alexander v. Inman*, 903 S.W.2d 686, 694 (Tenn. Ct. App. 1995); *Coleman v. Moody*, 52 Tenn. App. 138, 155, 372 S.W.2d 306, 311-314 (1963).

Most jurisdictions recognize some form of attorney's lien to secure a lawyer's claim for fees should a client fail to compensate the lawyer for the services rendered. *See* Charles W. Wolfram, *Modern Legal Ethics* §9.6.3, at 558 (1986). While a lawyer's right to compensation remains based on contract, attorney's liens provide

security for these contractual rights. *See Feissner v. Prince George's County*, 384 A.2d 742, 746 (Md. 1978); *Sarmon v. Goldwater, Taber and Hill*, 396 P.2d 847, 849 (Nev. 1964).

Two types of attorney's liens exist today either by the common law or by statute. The first type of lien is a retaining lien. A retaining lien is a possessory lien, *see Andrew Hall & Assocs. v. Ghanem*, 679 So.2d 60, 61 (Fla. Dist. Ct. App. 1996); *In re Coronet Ins. Co.*, 698 N.E.2d 598, 601 (Ill. App. Ct. 1998); *Panarello v. Panarello*, 585 A.2d 428, 430 (N.J. Super. Ct. Ch. Div. 1990), that permits a lawyer to retain a client's books, papers, securities, or money coming into his or her possession during the course of the representation until the attorney and client have settled their fee dispute or until the client has otherwise posted appropriate security for the outstanding fee. *See McDonald, Shea & Co. v. Railroad*, 93 Tenn. 281, 293, 24 S.W. 252, 255-56 (1893); *Brown & Reid v. Bigley*, 3 Tenn. Ch. (Cooper) 618, 621 (1878); *Hunt v. McClanahan*, 48 Tenn. (1 Heisk.) 503, 506-07 (1870); *see also Hoke v. Ortiz*, 632 N.E.2d 861, 865 (N.Y. 1994). A lawyer with a retaining lien has no independent right of action against the client that can be foreclosed or otherwise executed upon. *See McDonald, Shea & Co. v. Railroad*, 93 Tenn. at 293, 24 S.W. at 255-256*; Brown & Reid v. Bigley*, 3 Tenn. Ch. at 621; *see also Brauer v. Hotel Assocs, Inc.*, 192 A.2d 831, 833 (N.J. 1963).

The second type of lien, a charging lien, is based on a lawyer's equitable right to have the fees and costs due for the lawyer's services in a particular action secured by the judgment or recovery in that action. *See Southern v. Beeler*, 183 Tenn. 272, 301-02, 195 S.W.2d 857, 870 (1946); *Keith v. Fitzhugh*, 83 Tenn. 49, 50 (1885); *see also Bennett v. Weitz*, 559 N.W.2d 354, 355 (Mich. Ct. App. 1997); *Mack v. Moore*, 418 S.E.2d 685, 688 (N.C. Ct. App. 1992); *Shaffer v. Charleston Area Med. Ctr., Inc.*, 485 S.E.2d 12, 20-21 (W. Va. 1997). Unlike a retaining lien, a charging lien is not limited to the property in the attorney's possession. *See Brauer v. Hotel Assocs., Inc.*, 192 A.2d at 834. It attaches to any proceeds flowing from a judgment, as long as the lawyer worked to secure that judgment for the client. *See Butler v. GMAC*, 203 Tenn. 366, 370-71, 313 S.W.2d 260, 262 (1958); *see also Crolley v. O'Hare Int'l Bank*, 346 N.W.2d 156, 159 (Minn. 1984).

Both retaining and charging lien rights may be waived or forfeited in a variety of ways. They may be lost if a lawyer fails to represent his or her client's interests faithfully, honestly, and consistently or fails to discharge his or her duties with the utmost faith. *See First Nat'l Bank of Cincinnati v. Pepper*, 454 F.2d 626, 633 (2d Cir. 1972); *Western Life Ins. Co. v. Nanney*, 296 F. Supp. 432, 441 (E.D. Tenn. 1969); *People ex rel. MacFarlane v. Harthun*, 581 P.2d 716, 718 (Colo. 1978). Accordingly, a client may assert an affirmative defense or counterclaim based on professional negligence in response to a lawyer's action to enforce a charging lien. *See Paramount Eng'g Group, Inc. v. Oakland Lakes, Ltd.*, 685 So. 2d 11, 12 (Fla. Dist. Ct. App. 1996); *Jarman v. Hale*, 731 P.2d 813, 814 (Idaho Ct. App. 1986); *Coughlin v. SeRine*, 507 N.E.2d 505, 508 (Ill. App. Ct. 1987); *Neylan v. Moser*, 400 N.W.2d 538, 540 (Iowa 1987).

Even though Tennessee courts had recognized and enforced common-law charging liens, *see Keith v. Fitzhugh*, 83 Tenn. at 50, the General Assembly created a statutory attorney's lien in 1899.[6] Thus, Tenn. Code Ann. § 23-2-102 now provides that "[a]ttorneys and solicitors of record who begin a suit shall have a lien upon the plaintiff's or complainant's right of action from the date of the filing of the suit." This lien attaches to any proceeds flowing from a judgment, as long as the lawyer worked to secure the judgment for the client. *See Butler v. GMAC*, 203 Tenn. at 370-71, 313 S.W.2d at 262.

## B.

Ms. Starks' first argument is that the trial court's October 7, 1997 order did not create a valid, enforceable attorney's lien on the proceeds of the settlement because the lien was not noted in the trial court's final judgment. In making this argument, she relies on *Cobb v. Hallmark Studios, Inc.*, 704 S.W.2d 724, 725 (Tenn. Ct. App. 1985) in which this court held that an attorney's lien could not continue after the

---

[6]See Act of Apr. 12, 1899, ch. 243, § 1, 1899 Tenn. Pub. Acts 558, codified at Tenn. Code Ann. § 23-2-102 (1994). The Tennessee Supreme Court upheld the constitutionality of this statute in *Railroad v. Wells*, 104 Tenn. 706, 712, 59 S.W. 1041, 1043 (1900).

entry of a final judgment unless the lien was noted in the judgment itself. *See Cobb v. Hallmark Studios, Inc.*, 704 S.W.2d at 725.

Nothing in Tenn. Code Ann. § 23-2-102 specifically requires lawyers to include a notation of their lien in the final judgment. The Tennessee Supreme Court engrafted this requirement onto the statute in 1947 to assure that the "public or a subsequent purchaser" would have adequate notice of the lien's existence. *See Chumbley v. Thomas*, 184 Tenn. 258, 261, 198 S.W.2d 551, 552 (1947). While a notice requirement is certainly salutary insofar as third parties are concerned, it has less importance in disputes solely between the lawyer and his or her client. In these sorts of disputes, notice is not a problem because the client knew that the lawyer expected to be paid when he or she accepted the client's case. However, we need not address the effect of failing to note a lien in the final judgment because the Bart Durham Law Offices' lien is noted on the October 7, 1997 order.

The Bart Durham Law Offices did not include a notation of its attorney's lien in the order of judgment filed on September 4, 1997. However, on the very day that judgment was entered, the Bart Durham Law Offices moved for permission to withdraw from the case and to assert an attorney's lien on the settlement proceeds. Because we construe motions based on their substance, not their title, *see Bemis Co. v. Hines*, 585 S.W.2d 574, 576 (Tenn. 1979); *Pickard v. Ferrell*, 45 Tenn. App. 460, 471, 325 S.W.2d 288, 292-93 (1959), we construe the September 4, 1997 motion as a Tenn. R. Civ. P. 59.04 motion to alter or amend the judgment to include a notation of the attorney's lien in the judgment itself. While it would have been better practice to enter an amended judgment containing the notation of the attorney's lien, we construe the October 7, 1997 order as substantially complying with the requirement that the attorney's lien be noted in the judgment. The October 7, 1997 order put Ms. Starks and the rest of the world on notice that the Bart Durham Law Offices was asserting a lien on $51,091.99 of the settlement proceeds.

## C.

Ms. Starks' second argument is that even if the Bart Durham Law Offices effectively established the existence of its attorney's lien by substantially complying with Tenn. Code Ann. § 23-2-102, the mere establishment of the lien does not amount

to an adjudication of the rights between her and the Bart Durham Law Offices. She asserts that the attorney's lien was merely a charge against the settlement proceeds and that the trial court lacked authority to execute on the lien or to enter a judgment in the Bart Durham Law Offices' favor. We agree.

While a charging lien serves to secure an attorney's fees, it does not function as an adjudication of the rights between the lawyer and his or her client. *See Pierce v. Lawrence*, 84 Tenn. 572, 577-78, 1 S.W. 204, 205-06 (1886). A trial court may declare the existence of an attorney's lien in the suit out of which the dispute regarding the attorney's fee arose, but ordinarily an attorney, not being a party to the proceeding, may not obtain a judgment with respect to his or her fee in that action. *See State v. Edgefield & Kentucky R.R.*, 63 Tenn. 92, 97 (1874); *Perkins v. Perkins*, 56 Tenn. (9 Heisk.) 95, 97-98 (1871). Once the court declares the existence of the attorney's lien in the underlying litigation, the lien becomes an equitable charge on any recovery the client receives in the litigation.

After a court has declared an attorney's lien, the lawyer may then commence a separate proceeding in a court of competent jurisdiction to enforce his or her contractual right to a fee. *See Keith v. Fitzhugh*, 83 Tenn. 49, 50 (1885); *McCamy v. Key*, 71 Tenn. 247, 250-51 (1879); *Brown & Reid v. Bigley*, 3 Tenn. Ch. at 626; *Fain v. Inman*, 53 Tenn. (6 Heisk.) 5, 12 (1871).[7] In this separate suit, the issues relating to the attorney's entitlement to the fee and costs secured by the lien and to the attorney's professional negligence may be litigated. *See Perkins v. Perkins*, 56 Tenn. at 97-98; *Palmer v. Palmer*, 562 S.W.2d 833, 839 (Tenn. Ct. App. 1977); *Manson v. Stacker*, 36 S.W. 188, 190-91 (Tenn. Ch. App. 1896); *Brown & Reid v. Bigley*, 3 Tenn. Ch. at 626. This separate proceeding offers the client, now in the posture of a defendant, an opportunity to present defenses to the attorney's claim for a fee, including defenses that the attorney is not entitled to a fee because of professional negligence or some other basis. *See First Nat'l Bank of Cincinnati v. Pepper*, 454 F.2d 626 at 633; *Western Life Ins. Co. v. Nanney*, 296 F. Supp. at 441.

---

[7]The attorney may also seek to enforce his or her contractual right to a fee through a counterclaim filed in a separate proceeding commenced by the client. *See State v. Edgefield & Kentucky R.R.*, 63 Tenn. at 97.

There is one exception to the rule requiring an attorney to file a separate proceeding to collect an unpaid fee from a client. This exception applies to cases in which the money or property upon which the lien is to be enforced comes within the control of the court in the case in which the services were rendered. When the court is able to exert jurisdiction directly over the funds or property, the attorney need not resort to a separate suit to enforce his or her lien. *See State v. Edgefield & Kentucky R.R.*, 63 Tenn. at 97; *Palmer v. Palmer*, 562 S.W.2d at 839.

The facts of this case do not fall within the narrow confines of the exception to the general requirement that a lawyer must file a separate suit against his or her client to collect a disputed fee. The October 7, 1997 order directing Ms. Starks to pay $51,091.99 into court was not part of the underlying litigation between Ms. Starks and the Brownings and was entered after that litigation had been concluded. Rather, the order was part of the post-judgment dispute between the Bart Durham Law Offices and Ms. Starks over legal fees and expenses. Accordingly, because the settlement proceeds were never brought under the control of the trial court during the underlying litigation, the Bart Durham Law Offices should have filed a separate action against Ms. Starks for its fee rather than attempting to obtain it in this case.

Holding that the trial court should not have entertained the claim for legal fees and costs in the litigation between Ms. Starks and the Brownings will not deprive the Bart Durham Law Offices of its opportunity to adjudicate its right to recover its fees and expenses. Ms. Starks' pending malpractice action provides the Bart Durham Law Offices with an avenue to counterclaim for the unpaid attorney's fees and costs. If Ms. Starks does not prevail with her malpractice claim and if the Bart Durham Law Offices can establish that it is entitled to the claimed attorney's fees and costs, then the trial court in that case will be able to enter a judgment accordingly.

The Bart Durham Law Offices assert that requiring lawyers to file separate proceedings to collect contingent fees will undermine contingency fee-based representation. It argues that clients will take unfair advantage of lawyers by asserting that they did not receive satisfactory representation simply to avoid paying attorney's fees or to induce the attorney to accept a reduced fee. According to the Bart Durham Law Offices, assertions of legal malpractice, whether groundless or not, will tie up the attorney's fees until either the client files a malpractice action against

the lawyer or the lawyer files suit against the client to collect the disputed fee. This litigation will result in extended delays in receiving a fee and in requiring lawyers to incur significant additional expense to collect their fees.

We acknowledge that these arguments have validity in circumstances where a client uses a malpractice claim as a strategic ploy to avoid paying attorney's fees altogether or to induce the lawyer to accept a smaller fee. These circumstances, however, are not present in this case. Ms. Starks registered her displeasure with the settlement recommended by the Bart Durham Law Offices almost immediately and retained new counsel soon thereafter not only to represent her in the underlying action against the Browning defendants but also to pursue a malpractice claim against the Bart Durham Law Offices. If ever substantiated, her allegation that she was induced to settle when the Bart Durham Law Offices advised her that her $281,000 judgment against Mr. Browning could be rendered worthless if Mr. Browning filed for bankruptcy is not frivolous. Accordingly, we do not find that Ms. Starks' conduct exhibits the type of bad faith about which the Bart Durham Law Offices is concerned.

### III.

We affirm the portion of the order imposing a lien on $51,091.99 of the proceeds of Ms. Starks' settlement with the Browning defendants to secure the payment of the attorney's fees and costs claimed by the Bart Durham Law Offices. However, we reverse the portions of the order awarding the Bart Durham Law Offices a judgment for $51,091.99 and directing Ms. Starks to pay $51,091.99 into court. We remand the case to the trial court for further proceedings consistent with this opinion and tax the costs, in equal proportions, to the Bart Durham Injury and Accident Law Offices and to Stella L. Starks and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
BEN H. CANTRELL,

-11-

PRESIDING JUDGE, M.S.


_____
WILLIAM B. CAIN, JUDGE


-12-