IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 21, 2013 Session

**DOROTHY LAVON W. COLEMAN v. KEITH M. COLEMAN**
(ShawnCoulson, LLP, Wheeler & Franks Law Firm, P.C.,
Movants in Fee Dispute)

**An Appeal from the Circuit Court for Shelby County**
**No. CT-000981-07      John R. McCarroll, Jr., Judge**

**No. W2012-02183-COA-R3-CV - Filed September 19, 2013**

J. STEVEN STAFFORD, J., DISSENTING:

The majority opinion in this case is detailed and thorough. However, because I disagree with the basic premise upon which the majority opinion rests, I must dissent. The majority opinion concludes that the trial court had subject matter jurisdiction to consider and award ShawnCoulson its requested fee on the basis of the contractual attorney lien included in Ms. Coleman's contract with ShawnCoulson. I respectfully disagree, and instead, conclude that the trial court lacked subject matter jurisdiction to award ShawnCoulson its requested fee in this matter.

Some factual background on Ms. Coleman's relationship with ShawnCoulson is helpful. As discussed in the majority opinion, Ms. Coleman hired a multitude of lawyers to assist in prosecuting her divorce case. In addition to an ever-changing array of Memphis divorce lawyers, Ms. Coleman also retained two separate law firms to consult on the business aspects of her divorce. One of these firms was ShawnCoulson, a Washington D.C. law firm. ShawnCoulson's primary practice is in the area of international business transactions and litigation, including anti-bribery regulations. On October 30, 2009, after ShawnCoulson had withdrawn from its work with Ms. Coleman, William Shawn, ShawnCoulson's managing partner, who was not licensed to practice law in the State of Tennessee (this dissent may refer to Mr. Shawn and ShawnCoulson interchangeably), filed (and signed) a motion to enforce an attorney's lien in the Circuit Court of Shelby County, i.e., the same court that had adjudicated the divorce. The motion was filed pursuant to Tennessee Code Annotated Section 23-2-103, *infra,* and the parties' "engagement agreement." ShawnCoulson's lien request was filed under the same caption and docket number as the divorce case. On April 14, 2010, ShawnCoulson, which had by this time retained local counsel, filed a petition to enforce the attorney's lien and

for an expedited status conference. On May 19, 2011, ShawnCoulson filed a notice of amended and supplemental attorney's lien, along with an attorney affidavit in support thereof. In pertinent part, the engagement letter provides:

> As promised, this is our engagement agreement confirming the terms and conditions of our agreement to represent your interests in potential shareholder derivative litigation demand and matters concerning corporate custodianship, potential dissolution, and formal accounting procedures for Mid-American Engine, Inc. This engagement agreement will also cover any other matters we undertake at your direction, unless we agree otherwise, and in writing.
>
> By this engagement agreement, we comply with District of Columbia Bar requirements informing you of our professional services and billing policy to ensure a satisfactory attorney-client relationship on all matters we may undertake at your direction. Although we cannot guarantee the success of any given venture or matter, we will strive to represent your interests professionally and efficiently. I will have responsibility for your representation, and will use any other Firm lawyer and support personnel as needed. To that end, we will engage qualified Tennessee local counsel to facilitate our representation, and we understand you will separately engage Messrs. Wheeler and Franks for their services, including their representation in your divorce case.

In his affidavit, which was filed in support of his amended motion to perfect and enforce an attorney's lien, Mr. Shawn stated, in relevant part:

> 2. Dorothy Lavon Worley Coleman engaged ShawnCoulson, LLP and me on November 18, 2008, to represent her interests in this action as her corporate/international litigation and commercial counsel and co-counsel with other law firms that she had engaged.

On August 15, 2011, Ms. Coleman filed a response to and, in the alternative, a motion to dissolve the attorney's lien and request for declaratory judgment for return of excessive fees. In these filings, Ms. Coleman not only disputed the amount of the fees, but also raised the issue of whether the trial court had subject matter jurisdiction to adjudicate ShawnCoulson's claim. Specifically, Ms. Coleman noted that Mr. Shawn was neither licensed in Tennessee, nor was he the attorney of record in the divorce proceeding. In fact,

Mr. Shawn made no appearances in the trial court. Citing Tennessee case law, Ms. Coleman claimed that the trial court had no jurisdiction over ShawnCoulson's fee request as Mr. Shawn had no right to an attorney's lien because he was not the attorney of record in the divorce case. Rather, Ms. Coleman argued that, in order to seek its fees, ShawnCoulson was required to commence a separate proceeding and could not pursue its fee claim as part of the divorce case. In relevant part, Ms. Coleman's response in opposition to ShawnCoulson's amended motion for attorney's lien, states:

> Mr. Wheeler and/or Mr. Franks recommended Mr. Shawn to Coleman, and/or encouraged the involvement of Mr. Shawn in Coleman's representation in the Action. Wheeler and Franks did not disclose to Coleman that they were, in fact, partners in the ShawnCoulson LLP firm and members of the ShawnCoulson alliance, and therefore silent partners with Mr. Shawn.

In response to Ms. Coleman's filing in opposition to the motion for attorney's lien, Mr. Shawn filed a second affidavit, stating, in pertinent part, that:

> 2. Ms. Coleman was referred to the Firm by the Wheeler and Franks Law Firm, P.C. ("Wheeler and Franks"), whom she had retained to provide her with legal and business advice in her divorce proceeding and related matters. Messrs. Wheeler and Franks individually were affiliated with the Firm as part of its lobbying group.

> 3. Before Ms. Coleman executed her engagement letter with the Firm, I had disclosed to her Messrs. Wheeler and Franks' association with the Firm's lobbying group. I understand Ms. Coleman signed a separate engagement letter with Wheeler and Franks, received separate bills from Wheeler and Franks, met separately and appeared in court with Wheeler and dealt directly with Wheeler & Franks on divorce and other matters separate and apart from the Firm.

As discussed in the majority opinion, on August 10, 2012, the trial court entered a final judgment, awarding ShawnCoulson its requested fee. Ms. Coleman appealed. Oral argument was held before this Court on May 21, 2013. Thereafter, by Order of May 22, 2013, this Court ordered the parties to file supplemental briefs addressing the following issues:

-3-

1. Subject matter jurisdiction as discussed in the case of *Castle v. David Dorris Logging, Inc.*, No. W.2012-00917-COA-R3-CV, 2013 WL 500780 (Tenn. Ct. App. Feb. 11, 2013).

2. The existence of a claimed attorney's lien; and

3. The applicability of Tennessee Supreme Court Rule 19 and the effect, if applicable, of Appellee's failure to comply with Rule 19.

ShawnCoulson submitted its supplemental brief in compliance with the foregoing Order on June 3, 2013. On June 13, 2013, Ms. Coleman filed her supplemental brief. Concerning the award of fees to ShawnCoulson, the threshold issue that must be decided is: Whether the trial court possessed subject matter jurisdiction to award ShawnCoulson its attorney fees in this case.

It is well settled that subject matter jurisdiction implicates a court's power to adjudicate a particular case or controversy. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004); *Earls v. Mendoza*, No. W2010-01878-COA-R3-CV, 2011 WL 3481007, at *5 (Tenn. Ct. App. Aug. 10, 2011). "In the absence of subject-matter jurisdiction, a court cannot enter a valid, enforceable order." *Earls*, 2011 WL 3481007, at *5 (citing *Brown v. Brown*, 198 Tenn. 600, 281 S.W.2d 492, 497 (Tenn. 1955)). When subject matter jurisdiction is questioned, the court must ascertain whether the Tennessee Constitution, the Tennessee General Assembly, or the common law have conferred upon the court the power to adjudicate the case before it. *Id*. (citing *Staats v. McKinnon*, 206 S.W.3d 532, 542 (Tenn. Ct. App. 2006)). "Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is *de novo*, without a presumption of correctness." *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000).

Attorney liens are governed by Tennessee Code Annotated Section 23-2-102, which provides that: "Attorneys and solicitors of record who begin a suit shall have a lien upon the plaintiff's or complainant's right of action from the date of the filing of the suit." This lien attaches to any proceeds flowing from a judgment, as long as the lawyer worked to secure the judgment for the client. *See Butler v. GMAC*, 203 Tenn. 366, 370–71, 313 S.W.2d, 260, 262 (Tenn. 1958). The particular lien at issue in this case, a charging lien, is based on a lawyer's equitable right to have the fees and costs due for the lawyer's services in a particular action secured by the judgment or recovery in that action. *See Southern v. Beeler*, 183 Tenn. 272, 301–02, 195 S.W.2d 857, 870 (Tenn. 1946); *Keith v. Fitzhugh*, 83 Tenn. 49, 50 (Tenn. 1885). A charging lien is not limited to the property in the attorney's possession; rather, it attaches to any proceeds flowing from a judgment, as long as the lawyer worked to secure that

-4-

judgment for the client. *See* **Butler v. GMAC,** 203 Tenn. 366, 370–71, 313 S.W.2d 260, 262 (Tenn. 1958).

This Court recently decided the case of **Castle v. David Dorris Logging, Inc.**, No. W.2012-00917-COA-R3-CV, 2013 WL 500780 (Tenn. Ct. App. Feb. 11, 2013), which involved a post-trial dispute between one party to a personal injury case and their former counsel concerning fees. In **Castle**, after a jury verdict was entered in favor of Appellants, their former law firm filed an attorney's lien and a motion to recover its attorney's fees in the trial court. *Id*. at \*2. Appellants asserted that the trial court lacked subject matter jurisdiction to consider the former firm's motion. *Id*. The trial court disagreed and awarded the former firm its full requested fee. *Id*. Appellants appealed both the award of attorney fees to its former law firm, and the trial court's denial of Appellants' request to release funds held by the clerk. This Court concluded that the trial court lacked subject matter jurisdiction to consider the post-trial dispute and reversed the award of attorneys fees. *Id*. at \*10. In reaching our decision, this Court relied primarily upon two cases.

The first case, **Starks v. Browning**, 20 S.W.3d 645 (Tenn. Ct. App. 1999), was a personal injury case in which the plaintiff's lawyer sought to commence post-judgment litigation with his client over his attorney's fee. *Id*. at 651. In **Starks**, this Court stated the general principle underlying the recovery of attorney's fees under a lien as follows:

> Once the court declares the existence of the attorney's lien in the underlying litigation, the lien becomes an equitable charge on any recovery the client receives in the litigation. After a court has declared an attorney's lien, the lawyer may then commence a separate proceeding in a court of competent jurisdiction to enforce his or her contractual right to a fee. In this separate suit, the issues relating to the attorney's entitlement to the fee and costs secured by the lien and to the attorney's professional negligence may be litigated.

**Starks**, 20 S.W.3d at 652 (internal citations omitted). While the **Starks** case makes clear that the commencement of a separate action is ordinarily a "general requirement" for the recovery of attorney's fees, *Id*. at 653, the case also recognizes one exception to this requirement. This "exception applies to cases in which the money or property upon which the lien is to be enforced comes within the control of the court in the case in which the services were rendered." *Id*. In cases where this criterion is met, the **Starks** Court held that "the attorney need not resort to a separate suit to enforce his or her lien." *Id.*

-5-

In addition to **Starks**, the **Castle** Court relied upon a second case, **Schmitt v. Schmitt**, 118 S.W.3d 348 (Tenn. 2003), which also concerned the limited post-judgment jurisdiction of a trial court to hear related fee disputes brought by a party's former attorney. In **Schmitt**, our Supreme Court applied the **Starks** exception, *supra*, recognizing that "a trial court having jurisdiction over a divorce also has jurisdiction over the property at issue in the divorce during the underlying litigation." **Schmitt**, 118 S.W.3d at 355. The **Schmitt** Court reasoned that "it is in the interest of judicial economy to allow the same court to hear all matters regarding the property in question." **Id**. Accordingly, under **Schmitt**, a trial court ordinarily retains sufficient jurisdiction to adjudicate a fee dispute between a party to the underlying divorce and the attorney who represented that party in the divorce so long as the attorney has a valid attorney's lien and the property that is subject to the lien is within the control of the court. **Id**. Consequently, **Castle** and its progenitor cases (**Starks** and **Schmitt**) recognize post-judgment jurisdiction over the award of attorney's fees only where: (1) there is a valid cognizable attorney's lien; and (2) the trial court retains control over the underlying property or funds that would be subject to the lien. Because I conclude that the first requirement is not met in this case, I must dissent from the majority's opinion concluding that the trial court had subject matter jurisdiction to consider the attorney fee dispute at issue in this case.

### Valid Attorney's Lien

Tennessee Code Annotated Section 23-2-103 governs attorney liens in Tennessee. The statute provides:

> Any attorney or solicitor who is employed to prosecute a suit that has already been brought in any court of record shall have a lien upon the plaintiff's right of action from the date of the attorney's or solicitor's employment in the case; provided, that the record of the case shall first be made to show such employment by notice upon the rule docket of such court, by a written memorandum filed with the papers in the case or by notice served upon the defendant in the case.

**Id**. As a threshold requirement, in order to be entitled to an attorney's lien under this statute, an attorney must first be "employed to prosecute a suit." In the instant case, it is undisputed that neither Mr. Shawn, nor any other ShawnCoulson attorney, was licensed to practice law in the State of Tennessee. Moreover, there is no indication in the record that a ShawnCoulson attorney was admitted *pro hac vice* pursuant to Tennessee Supreme Court Rule 19, discussed *infra*.

Tennessee Code Annotated Section 23-3-103(a) prohibits an out-of-state attorney, who is not licensed or admitted in Tennessee, from engaging in the practice of law in this State:

> No person shall engage in the practice of law or do law business, or both, as defined in § 23-3-101, unless the person has been duly licensed and while the person's license is in full force and effect, nor shall any association or corporation engage in the practice of the law or do law business, or both. However, nonresident attorneys associated with attorneys in this state in any case pending in this state who do not practice regularly in this state shall be allowed, as a matter of courtesy, to appear in the case in which they may be thus employed without procuring a license, if properly authorized in accordance with applicable rules of court, and when introduced to the court by a member in good standing of the Tennessee bar, if all the courts of the resident state of the nonresident attorney grant a similar courtesy to attorneys licensed in this state.[1]

For purposes of this statute, the "practice of law" is defined as follows:

> "Practice of law" means the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies, or the soliciting of clients directly or indirectly to provide such services.

Tenn. Code Ann. §23-3-101(3).

Our Supreme Court has held that "[t]he purpose of our statutes regulating the practice of law is to prevent the public's being preyed upon by those who, for valuable consideration, seek to perform services which require skill, training and character, without adequate qualifications." *Old Hickory Eng'g & Mach. Co., Inc. v. Henry*, 937 S.W.2d, 786 (Tenn.

---

[1] Violation of Tennessee Code Annotated Section 23-3-103(a) is a Class A misdemeanor. Tenn. Code Ann. §23-3-103(b).

1996). Moreover, requiring out-of-state lawyers to comply with our State requirements also ensures that our judiciary can exercise control over these attorneys. As discussed in ***Crews v. Buckman Labs Int'l, Inc.***, 78 S.W.3d 852 (Tenn. 2002): "[R]egulations proscribing the unauthorized practice of law are designed to protect the public from being advised and represented in legal matters by incompetent and unreliable persons over whom the judicial department could exercise little control." ***Id***. at 865. As further noted by the ***Crews*** Court, upon admission to the bar, all lawyers become officers of the Court, and thereby become subject to the power of the Court to prevent and punish professional misconduct. ***Id***. For the good of the profession, the courts have a continuing obligation to safeguard the attorney-client relationship and to maintain the public's confidence in the integrity of the legal system. ***Id***.

In its supplemental brief, ShawnCoulson claims that it was engaged in the practice of law in connection with the Ms. Coleman's Tennessee divorce case. In support of its claim, ShawnCoulson states that it: (1) traveled to Tennessee to meet with the Special Master; (2) communicated with the Special Master on Ms. Coleman's behalf; (3) prepared a memorandum regarding offer of judgment in the divorce matter; (4) attended meetings with the Special Master; (5) drafted a joint defense agreement; (6) prepared confidential legal memorandum; (7) cross-examined auditors in a hearing before the Special Master; (8) worked with Ms. Coleman's divorce counsel to draft a contempt petition; (9) searched Mr. Coleman's hard drives per the Special Master's instructions; (10) attended additional meetings with the Special Master; (11) helped prepare Ms. Coleman for mediation; (12) fielded several calls from Ms. Coleman and her divorce counsel; (13) reviewed the Marital Dissolution Agreement in the divorce proceeding; and (14) inserted two key provisions and other miscellaneous comments and suggestions into the Marital Dissolution Agreement. While I concede that these activities may constitute the "practice of law" under the foregoing definition, the issue in this case is not the nature of the work allegedly performed, nor the work product produced; rather, the gravamen here is whether Mr. Shawn complied with the applicable rules for the authorization of out-of-state attorneys to practice in Tennessee courts.

The Supreme Court of Tennessee possesses the sole and exclusive authority to regulate the practice of law in Tennessee and to define the unauthorized practice of law. *See* ***Tennessee Envtl. Council, Inc. v. Tennessee Water Quality Control Bd.***, 254 S.W.3d 396, 403 (Tenn. Ct. App. 2007). In addition to the prohibitions outlined at Tennessee Code Annotated Section 23-3- 103, *supra*, Tennessee Supreme Court Rule 7, Section 1.01 provides that: "No person shall engage in the 'practice of law' or the 'law business' in Tennessee, except pursuant to the authority of this Court, as evidenced by a license issued in accordance with this Rule, or in accordance with the provisions of this Rule governing special or limited practice." Tennessee Supreme Court Rule 19 provides the means by which a non-resident attorney, such as Mr. Shawn, may be admitted on a limited, or *pro hac vice* basis (translated:

for this occasion or particular purpose, *see* Bryan A. Garner, A Dictionary of Modern Legal Usage 700 (2d ed. 1995)). Supreme Court Rule 19 provides, in pertinent part:

> A lawyer not licensed to practice law in Tennessee, licensed in another United States jurisdiction, and who resides outside Tennessee shall be permitted to appear *pro hac vice*, file pleadings, motions, briefs, and other papers and to fully participate in a particular proceeding before a trial or appellate court of Tennessee, or in a contested case proceeding before a state department, commission, board, or agency (hereinafter "agency"), if the lawyer complies with the following conditions. . .

*Id*. The applicable "conditions" are enumerated in Rule 19 and include whether the attorney seeking *pro hac vice* admission in Tennessee is currently in good standing and licensed for the practice of law in his or her own state. In order to be admitted *pro hac vice*, Tennessee Supreme Court Rule 19(d) requires:

> A lawyer seeking admission under this Rule shall file a motion in the court or agency before which the lawyer seeks to appear not later than the first occasion on which the lawyer files any pleading or paper with the court or agency or otherwise personally appears. In support of the motion, the lawyer shall file with the court or agency a certificate of good standing from the court of last resort of the licensing jurisdiction in which the lawyer principally practices and an affidavit by the lawyer containing the following information . . . .

"To the extent that a court rule or other law of this jurisdiction requires a lawyer who is not admitted to practice in this jurisdiction to obtain admission *pro hac vice* before appearing before a tribunal or administrative agency, this Rule requires the lawyer to obtain that authority." Tenn. R. Sup. Ct. Rule 8, Tennessee Rule of Professional Conduct 5.5, Cmt. 9 (2010).

Here, it is undisputed that no ShawnCoulson attorney ever filed a Rule 19(d) motion in the trial court. Only the Tupelo firm of Wheeler and Franks ever filed a Rule 19(d) motion in the trial court. Wheeler and Franks's *pro hac vice* admission, however, is insufficient to also admit ShawnCoulson, as ShawnCoulson was hired directly by Ms. Coleman, separate and distinct from the representation provided by Wheeler and Franks. From my review of the record, although Wheeler & Franks recommended the ShawnCoulson firm to Ms. Coleman,

Ms. Coleman hired Mr. Shawn on her own without consultation with her local divorce lawyer (at that time, Ms. Landers). Further, Mr. Shawn admits that "Ms. Coleman signed a separate engagement letter with Wheeler and Franks, received separate bills from Wheeler and Franks, met separately and appeared in court with Wheeler and dealt directly with Wheeler & Franks on divorce and other matters separate and apart from the [ShawnCoulson]." Accordingly, the *pro hac vice* admission of Wheeler and Franks simply did not apply to the representation provided by Shawn Coulson. Therefore, if, as ShawnCoulson argues, it was employed to "prosecute" the Tennessee divorce case on behalf of Ms. Coleman, then such representation was unauthorized as it is clear from the record that Mr. Shawn was never authorized, under Tennessee Supreme Court Rule 19, to practice law in Tennessee.

In an attempt to excuse its failure to comply with Rule 19(d), ShawnCoulson argues that it was not operating in violation of Rule 19; rather, it contends that it was operating pursuant to Tennessee Rule of Professional Conduct 5.5(c), which currently provides:

> (c) A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that:
>
> (1) are undertaken in association with a lawyer who is admitted to practice in this jurisdiction and who actively participates in the matter;
> (2) are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized;
> (3) are in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding in this or another jurisdiction, if the services arise out of or are reasonably related to the lawyer's representation of an existing client in a jurisdiction in which the lawyer is admitted to practice and are not services for which the forum requires *pro hac vice* admission; or
> (4) are not within paragraphs (c)(2) or (c)(3) and arise out of or are reasonably related to the lawyer's representation of an existing client in a jurisdiction in which the lawyer is admitted to practice.

Concerning what constitutes a "temporary basis," Comment 6 to the Rule states:

> There is no single test to determine whether a lawyer's services are provided on a "temporary basis" in this jurisdiction, and may therefore be permissible under paragraph (c). Services may be "temporary" even though the lawyer provides services in this jurisdiction on a recurring basis, or for an extended period of time, as when the lawyer is representing a client in a single lengthy negotiation or litigation.

However, I need not reach the question of whether ShawnCoulson was providing "legal services on a temporary basis" in this case. As correctly pointed out by Ms. Coleman in her supplemental brief, the version of Tennessee Rule of Professional Conduct 5.5(c) set out above was not adopted by the Tennessee Supreme Court until October 3, 2009, and did not become effective until January 1, 2010. *See **In Re: Petition for the Adoption of Rules Governing the Multijurisdictional Practice of Law***, No. M2008-01404-SC-RL1-RL (Tenn. Oct. 23, 2009) ("The amendments set out in the Appendix shall become effective on January 1, 2010).

As noted above, ShawnCoulson filed its initial motion for attorney's lien on October 30, 2009. Accordingly, as stated by Ms. Coleman in her supplemental brief, "ShawnCoulson could not have been operating under [current] 5.5(c), because it did not exist in Tennessee until after ShawnCoulson had terminated its representation and filed its initial lien motion." Rather, during the period that Mr. Shawn was allegedly engaged in Ms. Coleman's divorce case, Tennessee Rule of Professional Conduct 5.5 provided:

> A lawyer shall not:
>
> (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or
>
> (b) assist a person in the performance of activity that constitutes the unauthorized practice of law.

Tenn. R. Sup. Ct. Rule 8, Tennessee Rule of Professional Conduct 5.5 (2009). This version of Rule 5.5 clearly contains no allowance for legal services on a temporary basis as an exception to the requirements for *pro hac vice* admission in Tennessee. From the record, it is clear that ShawnCoulson failed to comply with Tennessee Rule of Professional Conduct 5.5 (2009), which was the provision in place at the time ShawnCoulson first pursued a lien.

From the totality of the circumstances, I must conclude that neither Mr. Shawn, nor any ShawnCoulson attorney complied with Tennessee Supreme Court Rule 19 for *pro hac vice* admission in Tennessee. Furthermore, as discussed above, ShawnCoulson has failed to show compliance with the version of Tennessee Rule of Professional Conduct 5.5 in effect at the time of the representation. Thus, the question is whether ShawnCoulson can possess a valid attorney lien pursuant to Tennessee Code Annotated Section 23-2-103, which would give rise to the trial court's jurisdiction, despite the fact that none of its attorneys were properly admitted to practice law in the State of Tennessee. I conclude that it cannot.

ShawnCoulson claims a charging lien against the proceeds of the divorce settlement. A charging lien attaches "to any proceeds flowing from a judgment, as long as the lawyer worked to secure the judgment for the client." ***Starks***, 20 S.W.3d at 651. As previously discussed, ShawnCoulson submits that the trial court had authority to consider this fee dispute by virtue of Tennessee Code Annotated Section 23-2-103, which grants an "attorney or solicitor who is employed to prosecute a suit" the right to place a charging lien on the cause of action. In addition, ShawnCoulson relies on ***Schmitt v. Schmitt*** for the proposition that the trial court in a divorce matter has subject matter jurisdiction to consider a post-judgment dispute between one party and his or her own attorney, despite the general rule that "an attorney, not being a party to the proceeding, may not obtain a judgment with respect to his or her fee in that action." ***Schmitt***, 118 S.W.3d at 353–54. The right to seek enforcement of a charging lien in the trial court pursuant to the exception in ***Schmitt***, however, is only applicable when the attorney has a "properly perfected" attorney lien. ***Id.*** at 353.

The plain language of Tennessee Code Annotated Section 23-2-103 requires that the attorney seeking the attorney lien be "employed to prosecute the case." Tennessee Code Annotated Section 23-1-108 provides that:

> No person shall practice law in this state without first receiving a license issued by the Tennessee supreme court and complying with Tennessee Supreme Court Rule 6 concerning admission to the practice of law, except that nothing in this section precludes the *pro hac vice* admission of persons licensed in other jurisdictions in accordance with Tennessee Supreme Court Rule 19.

Accordingly, the only individuals that are entitled to practice law in Tennessee are those who obtain a license from the State or those who are admitted *pro hac vice* pursuant to Tennessee Supreme Court Rule 19. Because ShawnCoulson meets neither of these requirements, it was not authorized to practice law in this State. It is axiomatic that an attorney that is unauthorized to practice law in Tennessee cannot "prosecute [a] case" in Tennessee for purposes of the

attorney lien statute. *See* Tenn. Code Ann. § 23-2-103. Because ShawnCoulson was not an attorney authorized to prosecute a case in Tennessee, it did not have the right to invoke the attorney lien statute.

Subject matter jurisdiction "is conferred by the constitution and statutes." ***Haley v. Univ. of Tenn.–Knoxville***, 188 S.W.3d 518, 522 (Tenn. 2006). The only statutory basis for the trial court's jurisdiction in this case is by virtue of the attorney lien statute. Without a properly perfected attorney lien in this case, the trial court adjudicating the underlying divorce had no subject matter jurisdiction to consider ShawnCoulson's fee request. ShawnCoulson contends, however, that it was granted a valid charging lien by virtue of its engagement letter with Ms. Coleman. Indeed, the engagement letter specifically states that, "[i]f any matter for which you engage us includes any monetary recovery, you agree to provide us with a lien on such recovery for accrued fees and costs." This agreement, ShawnCoulson contends, grants ShawnCoulson the right to pursue a statutory attorney lien regardless of its *pro hac vice* admission. However, as discussed in ***Castle v. David Dorris Logging***:

> Indeed, it is well-settled that the court does not gain jurisdiction through the consent of the parties. "'Subject matter jurisdiction differs fundamentally from personal jurisdiction in that the latter can be conferred by express or implied consent,' while subject-matter jurisdiction cannot be conferred 'by appearance, plea, consent, silence, or waiver.'" ***Landers v. Jones***, 872 S.W.2d 674, 675 (Tenn. 1994) (emphasis added). Thus, despite the parties' apparent consent . . . , the consent order [or in this case, the engagement letter] did not operate to confer jurisdiction on the trial court to consider the fee dispute . . . .

***Castle***, 2013 WL 500780, at \*8. Accordingly, Ms. Coleman's agreement to grant ShawnCoulson a charging lien does not result in ShawnCoulson's alleged attorney lien falling within the ambit of Tennessee Code Annotated Section 23-2-103.

For the foregoing reasons, I must conclude that because ShawnCoulson was not admitted to practice law in Tennessee, by virtue of either the Tennessee attorney licensing rules or *pro hac vice* admission, it was not entitled to rely on the attorney lien statute to invoke the trial court's jurisdiction. My conclusion concerns only the trial court's subject matter jurisdiction to consider ShawnCoulson's attorney fee request ancillary to the underlying divorce. ShawnCoulson sought to invoke the trial court's subject matter jurisdiction through operation of the attorney lien statute. However, the Legislature has seen fit to limit the allowance of attorney liens to only those attorneys "employed to prosecute the case." *See* Tenn. Code Ann. § 23-2-103. In addition, the Tennessee Supreme Court, at the time

ShawnCoulson was providing representation to Mr. Coleman, had determined that no attorneys could practice law in Tennessee without either obtaining a license or being admitted *pro hac vice*. Because ShawnCoulson was not authorized to practice law in Tennessee, it necessarily was also not authorized to prosecute Ms. Coleman's case. Further, because ShawnCoulson was not authorized to prosecute Ms. Coleman's case, it could not perfect an attorney lien pursuant to Tennessee Code Annotated Section 23-2-103. Without the benefit of both a "properly perfected" attorney lien, and the "property upon which the lien was to be enforced, . . . [being] within the control of the trial court," the trial court did not have subject matter jurisdiction to adjudicate this fee dispute between Ms. Coleman and her former counsel. *Schmitt*, 118 S.W.3d at 353–54. Instead, ShawnCoulson must follow the "general requirement that a lawyer must file a separate suit against his or her client to collect a disputed fee." *Starks*, 20 S.W.3d at 653.

As a result, I would conclude that the trial court lacked subject matter jurisdiction to enforce an attorney's lien in favor of ShawnCoulson ancillary to the underlying divorce. It is well settled that, when an appellate court determines that a trial court lacked subject matter jurisdiction, it must vacate (or reverse) the judgment and dismiss the case without addressing the substantive merits of the parties' dispute. *See, e.g.*, *J. W. Kelly & Co. v. Conner*, 123 S.W.622, 637 (Tenn. 1909); *Allen v. Day*, 213 S.W.3d 244, 248 (Tenn. Ct. App. 2006). Furthermore, our Supreme Court has held that, if a defendant pays a judgment which is afterwards reversed or set aside, the defendant is entitled to an order compelling the plaintiff to return and make restitution of such amounts paid. *Gates v. Brinkley*, 72 Tenn. 710, 712 (1880); *see also* Restatement (Third) of Restitution § 18 (2011) ("A transfer or taking of property, in compliance with or otherwise in consequence of judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim in restitution as necessary to avoid unjust enrichment."). Consequently, I would reverse the order of the trial court concerning the award of attorney's fees, service charges, and interest flowing therefrom, for lack of subject matter jurisdiction. This would necessarily obviate the need to consider the reasonableness of ShawnCoulson's requested fee. Ms. Coleman would then be entitled to restitution for any amounts already paid on the judgment. Based on the foregoing analysis, I must, therefore, dissent from the majority opinion in this case.

_____
J. STEVEN STAFFORD, JUDGE

-14-