# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
May 12, 2015 Session

## JULIE T. HATCHETT v. WILLIAM GLENN HATCHETT

**Direct Appeal from the Chancery Court for Fayette County**
**No. 14158PPRD     Martha B. Brasfield, Chancellor**

---

**No. W2013-00984-COA-R3-CV – Filed July 14, 2015**

---

The issues presented in this case arise from a dispute over attorney fees between Wife and her former attorney that arose following Wife's reconciliation with Husband in the underlying divorce. The trial court entered several orders related to the fee dispute and held the attorney in contempt for her failure to comply with those orders. On appeal, we conclude that the trial court erred in retaining jurisdiction over the fee dispute between Wife and her attorney after the Husband and Wife reconciled and expressed their desire that the case be dismissed. We therefore vacate the trial court's orders related to the fee dispute. We also vacate the trial court's order holding Wife's attorney in contempt and dismiss this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated,**
**Dismissed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN, J., and ROGER A. PAGE, SP. J., joined.

Lucian T. Pera and James Bennett Fox, Jr., Memphis, Tennessee, for the appellant, Rachel E. Putnam.

Kay Farese Turner, Memphis, Tennessee, *Pro se*.

Betty Stafford Scott, Medina, Tennessee, William H. Shackelford, Jr., Jackson, Tennessee, and Linda L. Holmes, Memphis, Tennessee, for the appellees, William Glenn Hatchett and Julie T. Hatchett.

# MEMORANDUM OPINION[1]

## I.    BACKGROUND AND PROCEDURAL HISTORY

The underlying proceedings from which this appeal arises were initiated in April 2006 when Julie T. Hatchett filed a complaint for divorce against her husband, William Glen Hatchett, in Fayette County Chancery Court. In January 2010, the Hatchetts reconciled and expressed a desire to have the case dismissed. Unfortunately, what began as a fee dispute between Ms. Hatchett and her attorneys snowballed into an avalanche of litigation involving multiple attorneys for both parties, and a case that could have been swiftly resolved instead dragged on for several years.

Ms. Hatchett employed several different attorneys over the course of the trial court proceedings. Initially, Ms. Hatchett was represented in the proceedings by attorney Mitch Moskovitz. In March 2008, she signed a written agreement for representation with the Memphis law firm Turner Putnam. Although the agreement was only signed on behalf of the firm by Kay Farese Turner, it appears that Ms. Hatchett was primarily represented thereafter in the divorce proceedings by Rachael Putnam. In October 2008, Ms. Hatchett terminated her relationship with Turner, Putnam, and the Turner Putnam law firm and hired Mississippi attorney Casey Lott. Shortly thereafter, Ms. Hatchett rehired Putnam to serve as local counsel so that Lott could be admitted to practice *pro hac vice* before the court.[2] Lott and Putnam continued to represent Ms. Hatchett in the divorce proceedings until the time that she reconciled with Mr. Hatchett. Mr. Hatchett was represented throughout the proceedings by William Shackelford and Betty Stafford Scott.

In December 2009, Ms. Hatchett attempted to terminate Putnam once again, but the trial court intervened, denying Putnam's request to withdraw based on a "drastic change" in Ms. Hatchett's personality and its concern that she lacked an understanding of her actions. In January 2010, the Hatchetts reconciled and expressed a desire to have the

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2]Rule 19 of the Tennessee Supreme Court provides that a motion for admission *pro hac vice* "shall not be granted unless the lawyer is associated in the proceeding with a lawyer licensed to practice law in Tennessee . . ." and that "[b]oth the Tennessee lawyer and the lawyer appearing pro hac vice shall sign all pleadings, motions, and other papers filed or served in the proceeding . . . ." Tenn. Sup. Ct. R. 19(g).

divorce proceedings dismissed.  Shortly thereafter, Lott met with Ms. Hatchett to confirm her desire to dismiss the divorce proceedings.  During the meeting, Lott and Ms. Hatchett also discussed the attorney's fees she owed him, as well as the fees she owed Putnam.  According to Lott, Ms. Hatchett agreed that the fees charged were reasonable but declined to sign an affidavit to that effect without consulting Mr. Hatchett, as he would be the one responsible for paying her bill.

On February 16, 2010, following his meeting with Ms. Hatchett, Lott filed a motion (purportedly on her behalf) seeking dismissal of the divorce proceedings "upon the payment of all outstanding fees and suit expenses."  Lott submitted that Ms. Hatchett had outstanding balances of $60,688.82 with his firm and $22,317.59 with Turner Putnam and asked that the court issue an order requiring Mr. Hatchett to pay those balances.  Mr. Hatchett objected to the motion and claimed that in light of Ms. Hatchett's desire to dismiss the case, the motion constituted a conflict of interest in violation of the Tennessee Rules of Professional Conduct.  Mr. Hatchett also argued that because he and Ms. Hatchett had reconciled and requested that the case be dismissed, the court no longer had jurisdiction to adjudicate or assess Ms. Hatchett's attorney's fees.  Additionally, Ms. Hatchett terminated her relationship with Lott and hired attorney Linda Holmes.  In June 2010, Holmes filed a motion on behalf of Ms. Hatchett objecting to the fees charged by Lott and Putnam as excessive and inconsistent with the work they performed.

In the ensuing months, proceedings in the trial court stalled, as the Hatchetts negotiated with Lott and Putnam.  At some point during the intervening period, Putnam's professional relationship with Turner and the Turner Putnam law firm ended.  Nevertheless, by December 2010, it appeared that the Hatchetts had reached agreements with Lott and Putnam to settle the fee disputes.  Lott agreed to release all claims against the Hatchetts for $15,000; Putnam reached a similar agreement with the Hatchetts for $6,000.  On December 9, 2010, Lott, Putnam, Holmes, Shackelford, and Scott each appeared before the trial court to announce the settlement agreements.  During the hearing, Putnam represented to the court that in light of her agreement with the Hatchetts, she agreed to hold the Hatchetts harmless as to any amounts owed to Turner or Turner Putnam.  Following the hearing, the trial court entered an order of reconciliation, and the Hatchetts tendered a check to Putnam for $6,000.

In March 2011, Turner sent a letter to Lott, Holmes, Shackelford, and Scott objecting to the Hatchetts' settlement agreement with Putnam.  Turner asserted that Putnam had no authority to settle with the Hatchetts on her behalf or on behalf of Turner Putnam at the December 9, 2010 hearing.  She indicated that Ms. Hatchett had an outstanding balance of $26,985.79 with the Turner Putnam law firm and that she intended to initiate proceedings to collect that amount.

3

Around the same time, Scott circulated a proposed consent order to Shackelford, Holmes, Lott, and Putnam reflecting the settlement agreements announced during the December 9, 2010 hearing. In pertinent part, the proposed consent order stated:

> On behalf of Husband, and/or Wife, Husband paid Attorney Rachael Putnam the negotiated sum of $6,000.00 which represented payment in full of any and all sums being due and payable to Rachael Putnam, Kay Farese Turner, and the law firm Turner Putnam. Said payment released all claims of Rachael Putnam, Kay Farese Turner and the law firm [of] Turner Putnam, including, but not limited to, the attorney's lien heretofore filed against Wife, and/or Husband.

Shackelford, Scott, Holmes, and Lott each signed the proposed consent order; Putnam, however, declined to do so in light of Turner's objection to the settlement. Instead, Putnam circulated two proposed orders reflecting that the $6,000 payment only represented payment of sums due to Putnam and only released Putnam's claims against the Hatchetts. Not surprisingly, Holmes, Shackelford, and Scott refused to sign Putnam's proposed orders.

In July 2011, Holmes filed a motion for entry of a contested order. In November 2011, Turner filed a notice of appearance. Turner objected to the entry of an order reflecting the settlement agreements and asked the court to assess sanctions against Putnam for misrepresenting her authority to settle Ms. Hatchett's fee. The matter was set for a hearing in December 2011.

During the December 2011 hearing, the trial court expressed disappointment that resolution of the divorce proceedings had been delayed for so long. The court found that the delay was caused by Putnam's refusal to sign the consent order reflecting her settlement agreement with the Hatchetts. The court also noted that the delay had caused the Hatchetts to incur additional attorney's fees and found that Putnam should be responsible for those fees. As such, the court instructed Holmes, Scott, and Shackelford to file affidavits reflecting fees that accrued since the December 2010 hearing. The court declined to impose sanctions against Putnam, holding that it had no jurisdiction over the dispute between Turner and Putnam. Nevertheless, at Turner's request, the court announced that it would include in its written order a requirement that Putnam pay the $6,000 fee in question to the court clerk pending resolution of her dispute with Putnam in the appropriate forum. Thereafter, the trial court entered a written order identical to the proposed consent order Scott had previously circulated among the attorneys. Despite the court's statements at the hearing, its written order did not include requirements that Putnam pay the Hatchetts' attorney's fees or pay the disputed $6,000 fee to the court clerk nor did it incorporate the court's oral ruling by reference.

Following the December 2011 hearing and order, Shackelford, Scott, and Holmes each submitted attorney's fee affidavits reflecting the amounts incurred by the Hatchetts since the December 2010 hearing. Putnam filed a motion to reconsider, which Turner and the Hatchetts subsequently opposed. Putnam did not pay the disputed $6,000 fee to the court clerk.

On March 18, 2013, the trial court entered a "FINAL ORDER" in an attempt to "resolve all remaining issues in this matter." After recounting the case's procedural background in some detail, the court entered judgments against Putnam in favor of Scott, Shackelford, and Holmes for their attorney's fees and declared that unless further action was taken, the divorce proceedings would be dismissed. In pertinent part, the court's order stated:

> IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that:
>
> (1) The Motion of Ms. Kay Farese Turner to set aside the agreement among the attorneys for the payment of attorney fees is hereby denied;
>
> (2) Ms. Betty Scott has a judgment against Ms. Rachael Putnam in the amount of $4,816.75, for which execution shall issue;
>
> (3) Mr. William Shackelford has a judgment against Ms. Rachael Putnam in the amount of $580.00, for which execution shall issue;
>
> (4) Ms. Linda Homes has a judgment against Ms. Rachael Putnam in the amount of $8,113.25 for which execution shall issue;
>
> (5) All matters between Ms. Turner and Ms. Putnam concerning payment of legal fees are a contract matter and shall be heard in Shelby County, Tennessee, and not in this court;
>
> . . . .
>
> (10) Mr. Casey Lott has been paid all attorney fees due him;
>
> (11) The Husband and Wife have until May 1, 2013[,] by which to file an Order of Dismissal for this divorce, or this case file shall be retired or dismissed . . . .

The March 2013 order did not include a requirement that Putnam pay the disputed $6,000 fee to the court clerk. Putnam timely filed a notice of appeal from the March 2013 order.

Additionally, she filed a motion requesting that the trial court enter an order staying execution of the judgments against her pending resolution of the case on appeal. The Hatchetts separately filed responses opposing Putnam's motion for stay of execution pending appeal. On May 2, 2013, the trial court entered an order of dismissal in the case.

On June 10, 2013, the trial court entered an amended order stating that "it appears that this Court has failed to address all issues from a prior oral ruling." To correct its oversight, the court ordered Putnam to deposit $6,000 with the court clerk within thirty days to be held in an interest-bearing account. The court stated that the money "shall be paid pursuant to orders in the lawsuit between Ms. Turner and Ms. Putnam in Shelby County, Tennessee." On July 10, 2013, the trial court entered a second amended order correcting clerical errors in the June 2013 amended order. Putnam separately filed timely notices of appeal from both the amended and second amended orders.

As of September 25, 2013, Putnam had not paid the judgments in favor of Shackelford, Scott, and Holmes nor had she paid the $6,000 fee to the court clerk. On that date, Ms. Hatchett filed a petition asking the court to hold Putnam in civil contempt for her failure to comply with the court's March 2013 order. Alternatively, Ms. Hatchett asked that the court designate the previously ordered attorney's fees and payment to the court clerk to be sanctions not dischargeable through bankruptcy. The trial court held a hearing on Putnam's motion for stay of execution and Ms. Hatchett's contempt petition in October 2013.

On January 29, 2014, the trial court entered an order holding Putnam in contempt for "failure to abide by the Court's rulings of December 1, 2011, and the Court's Final order of March 18, 2013, Amended Order of June 10, 2013, and Second Amended Order of July 10, 2013." Specifically, the court stated that Putnam was in contempt for failing to pay the $6,000 fee to the court clerk. Additionally, the court stated that attorney's fees incurred by Shackelford, Scott, and Holmes were a result of the dispute between Putnam and Turner and were therefore included in the "hold harmless" agreement Putnam agreed to during the December 2010 hearing. The court stated that the judgments "are actually in favor of the Hatchetts rather than the attorneys." Finally, the court granted Putnam's motion for a stay of execution on the attorney's fee judgments so long as Putnam made periodic monthly payments to the court clerk totaling $13,510. The court provided that if Putnam missed a payment, the attorneys would be allowed to execute on her bank accounts. The court clarified that in light of its order that Putnam pay $13,510 to the court clerk, Putnam would no longer be required to pay the disputed $6,000 fee to the court clerk. Putnam timely filed a notice of appeal from the January 2014 order.

On May 20, 2014, this Court entered an order consolidating Putnam's appeal from the trial court's January 2014 order with her appeal from its March 2013, June 2013, and

July 2013 orders.

## II. ISSUES PRESENTED

Putnam raises the following issues on appeal, as we have restated them:

1. Whether the trial court lacked jurisdiction to enter its March 2013 order, June 2013 amended order, July 2013 second amended order, and January 2014 order.

2. Whether the trial court erred in finding Putnam in civil contempt.

Turner raises the following issue on appeal, as we have restated it:

1. Whether the trial court erred in its January 2014 order by reversing its previous rulings that required Putnam to pay the disputed $6,000 fee to the court clerk.

Finally, both Turner and the Hatchetts raise the following issue:

1. Whether this Court should award Turner and the Hatchetts attorney's fees and costs incurred on appeal.

## III. ANALYSIS

The primary issue raised by Putnam on appeal challenges the trial court's jurisdiction to enter the March 2013, June 2013, July 2013, and January 2014 orders. None of the rulings contained in those orders arose from the underlying divorce proceedings between Mr. and Ms. Hatchett; rather, each of them originated from the fee dispute between Ms. Hatchett and her attorneys. Thus, as a threshold question, we must determine whether the trial court erred in retaining jurisdiction over a fee dispute between Ms. Hatchett and her attorneys that arose after the Hatchetts reconciled and expressed a desire to have their divorce proceedings dismissed.

Subject matter jurisdiction involves a court's power to adjudicate the particular case or controversy before it. *In re Estate of Trigg*, 368 S.W.3d 483, 489 (Tenn. 2012). Tennessee courts derive subject matter jurisdiction from the state constitution or from legislative acts and may not exercise jurisdictional powers that have not been conferred on them directly or by necessary implication. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). As such, parties themselves cannot confer subject matter on a court:

7

> A court's subject matter jurisdiction in a particular circumstance depends on the nature of the cause of action and the relief sought. It does not depend on the conduct or agreement of the parties, and thus the parties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver.

*Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999) (citations omitted).

Subject matter jurisdiction is so fundamental to a court's authority that a judgment or order entered by a court without subject matter jurisdiction is void and unenforceable. *Culbertson v. Culbertson*, 455 S.W.3d 107, 126 (Tenn. Ct. App. 2014). If an appellate court determines that the trial court lacked subject matter jurisdiction to enter a judgment or order, the appellate court must vacate the judgment and dismiss the case without reaching the merits of the appeal. *Id.* (citing *First Am. Trust Co. v. Franklin-Murray Dev. Co.*, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001)). The determination of whether subject matter jurisdiction exists is a question of law. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000). We therefore review the record de novo without a presumption of correctness. *Id.*

As a general rule, trial courts do not retain jurisdiction over fee disputes that arise between one party to a lawsuit and that party's attorney. *See Starks v. Browning*, 20 S.W.3d 645, 652-53 (Tenn. Ct. App. 1999). Ordinarily, an attorney may not obtain a judgment with respect to his or her fee in such cases because the attorney is not a party to the proceeding. *Castle v. David Dorris Logging, Inc.*, No. W2012-00917-COA-R3-CV, 2013 WL 500780, at *5 (Tenn. Ct. App. Feb. 11, 2013) (citing *State v. Edgefield & Kentucky R.R.*, 63 Tenn. 92, 97 (1874); *Perkins v. Perkins*, 56 Tenn. 95, 97-98 (1871)). There is a "narrow" exception to this general rule, however, in cases where the attorney has a lien on certain property within the court's control. *See Starks*, 20 S.W.3d at 653. Turner and the Hatchetts both contend that the trial court properly retained jurisdiction over the dispute because Putnam had a valid attorney's lien on property within the court's control.

Attorney liens in Tennessee are governed by statute. *See* Tenn. Code Ann. § 23-2-102 (2009). Tennessee Code Annotated section 23-2-102 provides that "[a]ttorneys and solicitors of record who begin a suit shall have a lien upon the plaintiff's or complainant's right of action from the date of the filing of the suit."[3] The type of lien at issue in this case, a charging lien, is based on the lawyer's equitable right to receive the fees and costs due for his or her services in a particular action secured by the judgment or recovery in

---

[3]Tennessee Code Annotated section 23-2-103 provides for a lien for attorneys employed to prosecute a suit after it has already begun.

that action. *See Starks*, 20 S.W.3d at 650-51 (citing *Southern v. Beeler*, 183 Tenn. 272, 301-02, 195 S.W.2d 857, 870 (1946); *Keith v. Fitzhugh*, 83 Tenn. 49, 50 (1885)). The lien attaches to any proceeds flowing from a judgment, so long as the lawyer worked to secure that judgment for the client. *Id.* at 651 (citing *Butler v. GMAC*, 203 Tenn. 366, 370-71, 313 S.W.3d 260, 262 (1958)).

This Court's recent decision in *Castle v. David Dorris Logging, Inc.* involved a post-trial fee dispute between one party to a personal injury case and their former attorney. In *Castle*, the appellants' former law firm filed an attorney's lien and a motion to recover fees after a jury verdict was entered in favor of the appellants. *Castle*, 2013 WL 500780 at *2. The appellants asserted that the trial court lacked jurisdiction to consider the motion. *Id.* The trial court disagreed and awarded the former law firm its full requested fee. *Id.* On appeal, this Court concluded that the trial court lacked subject matter jurisdiction to consider the post-trial dispute and reversed its award of attorney's fees. *Id.* at *10. In reaching that decision, this Court relied primarily on two cases.

The first case, *Starks v. Browning*, 20 S.W.3d 645 (Tenn. Ct. App. 1999), was a personal injury case in which the plaintiff's lawyer filed a post-judgment motion for execution of its attorney's lien in order to recover a disputed fee. *Id.* at 649. The trial court granted the motion and directed the plaintiff to pay the disputed fee. *Id.* On appeal, this Court reversed and, in doing so, stated the general principle underlying the recovery of attorney's fees under a lien as follows:

> While a charging lien serves to secure an attorney's fees, it does not function as an adjudication of the rights between the lawyer and his or her client. A trial court may declare the existence of an attorney's lien in the suit out of which the dispute regarding the attorney's fee arose, but ordinarily an attorney, not being a party to the proceeding, may not obtain a judgment with respect to his or her fee in that action. Once the court declares the existence of the attorney's lien in the underlying litigation, the lien becomes an equitable charge on any recovery the client receives in the litigation.
>
> After a court has declared an attorney's lien, the lawyer may then commence a separate proceeding in a court of competent jurisdiction to enforce his or her contractual right to a fee. In this separate suit, the issues relating to the attorney's entitlement to the fee and costs secured by the lien and to the attorney's professional negligence may be litigated. This separate proceeding offers the client, now in the posture of a defendant, an opportunity to present defenses to the attorney's claim for a fee, including defenses that the attorney is not entitled to a fee because of professional

9

negligence or some other basis.

*Starks*, 20 S.W.3d at 652 (footnotes and internal citations omitted). Thus, the *Starks* case made it clear that the commencement of a separate action is ordinarily a "general requirement" for recovery of attorney's fees. *Id.* at 653. However, the case also recognized one exception to the general requirement. The "exception applies to cases in which the money or property upon which the lien is to be enforced comes within the control of the court in the case in which the services were rendered." *Id.* In such circumstances, the court in *Starks* held that "the attorney need not resort to a separate suit to enforce his or her lien." *Id.*

The court in *Castle* also relied on the Tennessee Supreme Court's opinion in *Schmitt v. Smith*, 118 S.W.3d 348 (Tenn. 2003), which also concerned the limited post-judgment jurisdiction of a trial court to hear related fee disputes brought by a party's former attorney. *Id.* at 351. In *Schmitt*, the Tennessee Supreme Court applied the exception recognized by this Court in *Starks* to hold that the trial court had jurisdiction to consider the fee dispute between a client and his attorney regarding a divorce action. *Id.* at 354-55. The court stated that because the property subject to the lien was still under the trial court's jurisdiction, it was "in the interest of judicial economy to allow the same court to hear all matters regarding the property in question." *Id.* at 355. Accordingly, a trial court retains sufficient jurisdiction to adjudicate a fee dispute between a party to a divorce and that party's attorney so long as (1) the attorney has a valid attorney's lien and (2) the trial court retains control over the property or funds that is subject to the lien. *See Coleman v. Coleman*, No. W2012-02183-COA-R3-CV, 2013 WL 5308013, at *28 (Tenn. Ct. App. Sept. 19, 2013) (Stafford, J., dissenting).

The facts of this case do not fall within the "narrow" exception outlined in *Starks* and applied in *Schmitt*. *See Starks*, 20 S.W.3d at 653. First, it is not clear from the record that Putnam asserted or filed an attorney's lien related to the disputed fees.[4] Second, even if we are to assume Putnam did assert a lien related to the fees, the lien would only attach to proceeds flowing from a judgment she worked to secure on Ms. Hatchett's behalf. *See id.* at 650. Because Putnam's efforts did not secure any money or property on Ms. Hatchett's behalf in this case, there are no proceeds to which her lien would attach. *See* 7 AM. JUR. 2d *Attorneys at Law* § 327 (2007) ("By dismissing, compromising, or settling his or her cause of action, a client may defeat his or her attorney's right to a lien which the attorney would otherwise have had."). Accordingly,

---

[4]The Hatchetts attached a document to their appellate brief titled "Notice of Attorneys Lien" filed by Turner and Putnam on October 30, 2008. However, the document is not included in the record on appeal. Documents attached to an appellate brief but not included in the record on appeal cannot be considered by this Court as part of the record on appeal. *See UT Med. Grp., Inc. v. Vogt*, 235 S.W.3d 110, 112 (Tenn. 2007) (citing Tenn. R. App. P. 13(c)).

the trial court erred in retaining jurisdiction over the attorney fee dispute between Putnam and Ms. Hatchett.

In reaching this conclusion, we recognize the important policy issues at play. As courts in other jurisdictions have long recognized, when parties to a divorce have reconciled and expressed a desire to dismiss the divorce proceedings, public policy should not permit attorneys to prolong the litigation against the wishes of their client. *See, e.g.*, *Bell v. Bell*, 108 So. 375, 378 (Ala. 1926); *Schwartz v. Schwartz*, 259 P.2d 33, 35 (Cal. Ct. App. 1953); *Keefer v. Keefer*, 78 S.E. 462, 464-65 (Ga. 1913); *Hardy v. Hardy*, 92 N.E.2d 221, 222 (Ind. 1950); *Jones v. Jones*, 97 S.W.2d 949, 951 (Tex. Comm'n App. 1936); *Hillman v. Hillman*, 85 P. 61, 62 (Wash. 1906). Courts that deny an attorney's attempt to continue divorce proceedings in spite of their client's wishes recognize that public policy favors the peaceful resolution of marital problems. *See Hillman*, 85 P. at 62. Likewise, Tennessee courts have recognized that public policy favors the preservation of marital relations. *See Gilley v. Gilley*, 778 S.W.2d 862, 863-64 (Tenn. Ct. App. 1989). To allow attorneys to prolong divorce litigation against the wishes of their clients would have a tendency to imperil the success of reconciliation attempts. Such a result is certainly conceivable in cases such as the one before us, where, though the parties remained reconciled throughout the extended litigation, the divorce proceedings are ongoing nearly five years after the parties sought to have them dismissed.

Of course, public policy favoring reconciliation does not go so far as to require that attorneys provide reconciling couples with legal services free of charge. Such an outcome could conceivably result in attorneys being hesitant to represent parties in divorce actions for fear that reconciliation would destroy their fees; worse, it could provide an incentive for attorneys to discourage or impede reconciliation. However, attorneys representing reconciled parties are not without a remedy to recover their fees.

Turner and the Hatchetts contend that the trial court had jurisdiction to enter the March 2013, June 2013, and July 2013 orders because Putnam voluntarily submitted herself to the trial court's authority by pursuing her attorney's fees in the trial court. This argument is also without merit. As we stated above, "parties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver." *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999). Thus, despite Putnam's apparent consent to allow the trial court to resolve the fee dispute, the trial court had no jurisdiction to do so. Even entry of the proposed consent order that Putnam refused to sign following the December 9, 2010 hearing did not operate to confer jurisdiction on the trial court to consider issues related to the fee dispute. *See Castle v. David Dorris Logging, Inc.*, No. W2012-00917-COA-R3-CV, 2013 WL 500780, at *8 (Tenn. Ct. App. Feb. 11, 2013). The trial court lacked jurisdiction to resolve the fee dispute between Ms. Hatchett and her attorneys. Because

11

the trial court's March 2013, June 2013, and July 2013 orders were each entered to resolve disputes that arose from that original dispute, we conclude that the trial court lacked subject matter jurisdiction to enter those orders. We therefore vacate the trial court's March 2013, June 2013, and July 2013 orders in this case.

Next, we must address the trial court's finding of contempt in its January 2014 order. The trial court found Putnam in contempt for her failure to comply with its March 2013, June 2013, and July 2013 orders. We have already established that the trial court erred in entering those orders because it lacked jurisdiction over the subject matter. Thus, the question before us is whether Putnam may be held in contempt of orders that were erroneously entered by the trial court.

Tennessee law provides that every court has the inherent power to enforce compliance with its lawful orders through civil contempt sanctions. Tenn. Code Ann. § 16-1-103 (2009). The threshold issue in a contempt proceeding is whether the order alleged to have been violated is "lawful." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 355 (Tenn. 2008). The Tennessee Supreme Court has stated that:

> A lawful order is one issued by a court with jurisdiction over both the subject matter of the case and the parties. An order is not rendered void or unlawful simply because it is erroneous or subject to reversal on appeal. Erroneous orders must be followed until they are reversed. However, an order entered without either subject matter jurisdiction or jurisdiction over the parties is void and cannot provide the basis for a finding of contempt.

*Konvalinka*, 249 S.W.3d at 355 (footnotes and internal citations omitted). Thus, orders entered by a trial court without jurisdiction are generally void *ab initio*. *See Moorcroft v. Stuart*, No. M2014-00691-COA-R3-CV, 2015 WL 4086334, at *4-5 (Tenn. Ct. App. July 6, 2015). Because the trial court had no jurisdiction to enter the March 2013, June 2013, and July 2013 orders, we conclude that those orders were void *ab initio* and therefore cannot serve as the basis for a finding of contempt in this case. Accordingly, we vacate the trial court's order finding Putnam in contempt of court for failure to comply with its void prior orders.

Turner and the Hatchetts each request an award of attorney's fees and expenses associated with this appeal. Considering the result reached in this appeal, we decline to make such an award.

12

## IV. CONCLUSION

Based on the foregoing, we vacate the trial court's March 2013, June 2013, July 2013, and January 2014 orders and dismiss this case. This case is remanded to the trial court solely for the collection of costs. The costs of this appeal are assessed to the parties equally, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE