NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0242n.06

No. 25-6091

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JENAI HAYES, et al.,

    Plaintiffs

BRIAN CHRISTOPHER WINFREY,

    Appellant,

v.

METROPOLITAN GOVERNMENT OF
NASHVILLE & DAVIDSON COUNTY,
TENNESSEE, et al.,

    Defendants

ANN BUNTIN STEINER; JESSE F.
HARBISON,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
May 28, 2026
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF
TENNESSEE

OPINION

---

Before:  SILER, NALBANDIAN, and HERMANDORFER, Circuit Judges.

HERMANDORFER, Circuit Judge.  This appeal concerns a dispute among former co-counsel over the terms of an oral fee agreement.  Ann Steiner and Jesse Harbison litigated the underlying case for nearly five years before Brian Winfrey joined their team.  After the case settled, the lawyers gave conflicting accounts of Winfrey's compensation terms.  The district court held evidentiary hearings to resolve the matter, credited Steiner and Harbison's account, and awarded

Winfrey fees on that basis. We affirm the district court's fee award and deny Steiner and Harbison's motion for appellate attorneys' fees.

I

This fee dispute arose from a lawsuit by five school administrators against the Metropolitan Government of Nashville. Ann Steiner and Jesse Harbison litigated the case for around five years. With trial approaching, they asked Brian Winfrey to join the plaintiffs' litigation team. He agreed during a June 2, 2025, meeting, but the parties never memorialized his compensation terms in writing. The case unexpectedly settled roughly five weeks later—a development Winfrey attributes to his addition to the case.

Tensions over attorneys' fees surfaced immediately. Harbison, Steiner, and Winfrey disputed the terms of their oral contract, prompting Winfrey to file notice of a charging lien on the settlement proceeds. *See* Tenn. Code Ann. § 23-2-103. Harbison and Steiner asked the district court to adjudicate the fee dispute and moved with the original settling parties to deposit the contested funds with the district court. The district court accepted the funds and held two evidentiary hearings to resolve the conflict.

At the first hearing, the attorneys offered different versions of the agreement reached on June 2. Winfrey testified that Steiner and Harbison promised him the greater of (i) one-third of all attorneys' fees or (ii) his fee petition, both contingent on the case's ultimate success. He claimed that during a post-settlement phone call, Steiner reiterated that promise and assured him that he would be paid one-third of all fees. Steiner and Harbison offered a different account. They testified that the agreement was strictly for $700 an hour. Both emphasized that they would not have surrendered one-third of the fee award to an attorney joining on the eve of trial after their own five-year investment. Steiner also disputed Winfrey's characterization of the post-settlement

2

phone call. In her version of events, she was shocked by Winfrey's demand for one-third of the fees; to defuse the situation, she told Winfrey that he would "get what's fair" and they could discuss it later. Oct. 1 Hr'g Tr., R.332, PageID 7900.

Steiner and Harbison corroborated their account with additional evidence. Post-settlement emails showed that members of the plaintiffs' litigation team repeatedly requested Winfrey's hours for billing purposes. In response, Winfrey sent a flurry of lengthy emails airing personal and professional grievances. And while those emails make clear Winfrey's demand for one-third of the total fee award, at one point Winfrey expressly acknowledges "the agreement Ann [Steiner] made at [his] hourly rate." Emails, R.312-1, PageID 7489. Steiner and Harbison also presented testimony from two attorneys who, like Winfrey, had joined the case after its initiation. Both were compensated on an hourly basis and understood that Winfrey had joined under the same arrangement. One specifically recalled Winfrey stating that the only compensation he wanted was $700 per hour.

In addition to covering the disputed fee structure, the first hearing addressed the number of hours Winfrey worked. Winfrey claimed that he devoted himself entirely to trial preparations—canceling travel plans, sidelining other cases, and working at least 12 hours a day, 7 days a week. Steiner and Harbison were skeptical. Because the team's documents were stored on a shared drive, Harbison could track each attorney's document access and activity. Based on that data, she estimated that Winfrey spent no more than 112 hours on the matter during his roughly five-week involvement.

The district court scheduled a second hearing to receive "any additional testimony offered by either side." Scheduling Order, R.327, PageID 7790. In the interim, it directed the parties to brief the disputed issues. Winfrey's brief doubled down on his workhorse narrative, asserting that

3

he shut down the rest of his practice and devoted more than 600 hours to the case over a 37-day period—a rate of more than 16 hours per day. Two days before the second hearing, Steiner and Harbison filed a "credibility brief" responding to those claims. The brief cataloged publicly available docket entries from six of Winfrey's other federal cases during the relevant period. Those entries demonstrated that Winfrey filed motions, attended depositions and mediations, worked on discovery matters, communicated with opposing counsel, and traveled out of town for a holiday. Winfrey responded only with a motion at the second hearing to strike the brief as "unwarranted," which the district court denied. Oct. 22 Hr'g Tr., R.343, PageID 8657. And while Winfrey asserted he could produce billing records "[i]f compelled to submit a formal fee petition," Winfrey Decl., R.334-6, PageID 8338, he offered no additional evidence at the second hearing.

After hearing ten hours of testimony and argument and reviewing the lawyers' dueling written submissions, the district court issued a ruling from the bench. The district court credited Harbison and Steiner's account of the oral contract and held that Winfrey was entitled to $700 per hour for his work on the case. The court stressed that its conclusion turned on credibility. Winfrey's claim to one-third of the fees rested solely on his own impeached testimony, while Steiner and Harbison's version was corroborated by emails, the parties' course of dealing, and testimony from the other attorneys. The district court further noted that Winfrey had neither produced the detailed billing records he claimed to possess nor meaningfully rebutted Harbison's 112-hour estimate derived from the shared drive. Relying on that estimate, the district court awarded him $78,400. Anticipating that Winfrey would appeal, the district court also conducted a quantum meruit analysis as an alternative holding.

Winfrey filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59. His motion sought a new evidentiary hearing and raised many of the same issues

4

he now presses before this Court. The district court largely denied that motion but revised its fee award upwards by 35.5 hours based on an earlier filing in which Harbison and Steiner estimated Winfrey's time spent in mediation and drafting. The court entered a final award of $103,250. Winfrey timely appealed the resolution of the fee dispute, and we have jurisdiction to review it. *See Exact Software N. Am., Inc. v. DeMoisey*, 718 F.3d 535, 540 (6th Cir. 2013); *Green v. Nevers*, 196 F.3d 627, 631 n.2 (6th Cir. 1999).

II

Actions to adjudicate and enforce attorneys' charging liens are equitable in nature, even when the underlying dispute turns on state-law contract principles. *See DeMoisey*, 718 F.3d at 546; *cf. Starks v. Browning*, 20 S.W.3d 645, 652 (Tenn. Ct. App. 1999). "Our standard of review on appeal gives deference to the district court." *Kalyawongsa v. Moffett*, 105 F.3d 283, 289 (6th Cir. 1997). We thus review the district court's fee "calculations for an abuse of discretion, keeping in mind the well-earned nature of this discretion given the district court's role in handling the underlying litigation." *DeMoisey*, 718 F.3d at 547. A district court abuses its discretion if it "relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012). Factual findings are clearly erroneous only if the record leaves us "with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (citation omitted). Credibility determinations, a subset of factual findings, receive even greater deference. *Id.* at 575; *cf. Crye-Leike, Inc. v. Carver*, 415 S.W.3d 808, 814-15 (Tenn. Ct. App. 2011). When a district court credits a witness who "has told a coherent and facially plausible story that is not contradicted by extrinsic

evidence," findings based on that testimony "can virtually never be clear error." *Anderson*, 470 U.S. at 575.

III

On appeal, Winfrey (a) contests the district court's finding of an hourly-rate agreement, (b) disputes the district court's calculation of his compensable hours, and (c) claims that unfairness in the proceedings below requires reversal. He also attacks the district court's alternative quantum meruit holding. Because we affirm the district court's contract-based holding, we do not reach the quantum meruit issue. Harbison and Steiner defend the judgment and seek appellate attorneys' fees. We agree with them on the merits. But because Winfrey's appeal is not frivolous, we deny their motion for fees.

A

In Tennessee, an attorney who joins a case mid-litigation may assert a charging lien against settlement proceeds. Tenn. Code Ann. § 23-2-103. The attorney seeking enforcement of the lien bears the burden of proving his entitlement to payment. *See Starks*, 20 S.W.3d at 653; *Chambers v. Devore*, 2015 WL 4381631, at *8 (Tenn. Ct. App. July 17, 2015). When an attorney's compensation depends on an underlying contract, ordinary state contract principles govern enforcement. *See Starks*, 20 S.W.3d at 650, 652.

To enforce an oral contract in Tennessee, a party "must prove (1) mutual assent to the contract's terms and (2) that the terms are sufficiently definite." *Davidson v. Holtzman*, 47 S.W.3d 445, 453 (Tenn. Ct. App. 2000). Mutual assent, or a meeting of the minds, is assessed under an objective standard and may be inferred based on the parties' conduct and course of dealing. *See Moody Realty Co. v. Huestis*, 237 S.W.3d 666, 674 (Tenn. Ct. App. 2007); *T.R. Mills Contractors, Inc. v. WRH Enters., LLC*, 93 S.W.3d 861, 866 (Tenn. Ct. App. 2002). Where, as here, the parties

6

offer different versions of the events underlying contract formation, "whether a meeting of the minds occurred is a question of fact." *Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800, 807 (Tenn. Ct. App. 2015) (cleaned up).

Winfrey challenges the district court's finding that the parties had a meeting of the minds that Winfrey would be paid $700 an hour for his time billed upon successful resolution of the case. We detect no error—let alone a clear one—in the district court's finding. Steiner and Harbison each testified that Winfrey agreed to be compensated $700 an hour at their June 2 meeting. That testimony was both "coherent" and "plausible." *Anderson*, 470 U.S. at 575. Their account of Winfrey's fee structure was consistent with how every other late-added attorney was paid, subsequent requests for Winfrey's hours, and Winfrey's own email acknowledgment of an hourly agreement. 25-6091 *See Davidson*, 47 S.W.3d at 454. Although Winfrey introduced other emails in which he denied the existence of an hourly agreement, the district court "was free to disregard them" based on its dim assessment of Winfrey's credibility in this matter. *Id.*

Winfrey doesn't challenge the credibility assessment as clear error. And it's unclear how he could. As the district court observed, Winfrey testified that he shut down the rest of his practice and dedicated himself entirely to the underlying case. But that tunnel-vision account was rebutted by undisputed evidence revealing Winfrey's active participation in at least six other matters over the same period, with additional time spent on holiday travel. That same evidence showed that the exorbitant number of hours Winfrey asserted—a clip of over 16 hours per day, every day—verged on impossibility. On this record, we do not have a "definite and firm conviction" that the district court erred. *Anderson*, 470 U.S. at 573 (citation omitted).

Winfrey's counterarguments rest on a blinkered reading of the record. First, he seizes on the specific phrase the district court used to express its holding: "the fee agreement in this case

7

was $700 an hour, no matter what happened." Oct. 22 Hr'g Tr., R.343, PageID 8657. Winfrey takes "no matter what" to its literal extreme and points out all manner of scenarios that were not included in the parties' hearing testimony; from there, he claims that the district court impermissibly supplied a new contract term. But, as with all proceedings, "[w]e must review the court's statement in context." *United States v. Akridge*, 2024 WL 84097, at *4 (6th Cir. Jan. 8, 2024). Here, the district court's ruling was meant to signal that it sided with Harbison and Steiner's account of the oral contract. Read in context, "no matter what" referred to the fact that payment would follow regardless of whether success came by settlement or trial victory.

Second, Winfrey contends that there could be no meeting of the minds on his settlement compensation because Harbison and Steiner did not expect the case to settle. That argument also fails. Both attorneys testified that on June 2 they agreed to pay Winfrey "$700, if we win." Oct. 1 Hr'g Tr., R.332, PageID 7895. Settlement is an ordinary and expected form of success in litigation. Moreover, Winfrey admitted that he specifically advised the pair not to count settlement out because "cases have a funny way of settling or resolving when [he] enter[s] shortly before trial." *Id.* at PageID 7864. The district court did not clearly err in concluding that the parties mutually assented to $700 per hour upon any successful resolution of the case.

B

Winfrey next challenges the district court's calculation of his hours. We review that determination for abuse of discretion. *See Kalyawongsa*, 105 F.3d at 290; *DeMoisey*, 718 F.3d at 547. And we see none.

The district court reasonably credited Harbison's testimony—based on an audit of the team's shared drive—that Winfrey worked roughly 112 hours. Although Winfrey attacks her estimates as pure speculation, Harbison described her methodology and expressed a willingness to

revise her estimate if Winfrey provided his hours. Yet Winfrey has not attempted to discredit her account via "extrinsic evidence," despite his continued assertion that he possesses yet-to-be-produced billing records documenting over 600 hours. *Anderson*, 470 U.S. at 575. We have recognized that a district court's discretion is "paramount" when it's asked to calculate hours based on "shabby billing records." *DeMoisey*, 718 F.3d at 548. That discretion follows a fortiori when one side merely describes records it has declined to produce. The district court did not abuse its discretion by relying on Harbison's audit of the electronic case-file access, particularly when the only opposing testimony it received was "totally impeached" by the credibility brief. Oct. 22 Hr'g Tr., R.343, PageID 8659; *see DeMoisey*, 718 F.3d at 547. If anything, the district court's decision to revise the hours-estimate upwards when Winfrey pointed to additional proof—supplied by Harbison and Steiner—demonstrates its careful consideration of the evidence in this matter.

Winfrey's counterarguments do not convince. To start, Winfrey contends that, once the district court accepted the hourly-rate contract, the burden shifted to Harbison and Steiner to prove Winfrey's hours. He asserts that Harbison's estimates were too speculative to satisfy that burden. But, as the party seeking payment, Winfrey bore the burden of proving the fees owed. *See Chambers*, 2015 WL 4381631, at *8. Winfrey next faults the district court for relying on Harbison's estimates and not his own 600-hour account, but the district court was entitled to reject his uncorroborated, impeached assertions. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984). Finally, Winfrey claims that Harbison and Steiner testified that his fees would be determined through a fee petition to the district court, and that the court's use of another methodology improperly "short-circuited" that process. Winfrey Br. 26. That account misreads the record. Harbison and Steiner testified that if the case succeeded *at trial*, each attorney would submit their fee petition—a standard step in federal civil-rights litigation. *Cf.* 42 U.S.C. § 1988(b).

9

Nothing in their testimony suggested that a fee petition was the sole mechanism of compensation, and their repeated requests for Winfrey to provide his hours are inconsistent with any such understanding.

C

Winfrey next argues that two procedural errors combined to deny him a fair hearing. We again disagree.

*First*, Winfrey objects to the district court's consideration of the credibility brief filed two days before the second hearing. District courts, though, have "broad discretion" to manage their dockets and admit relevant evidence. *C.S. v. McCrumb*, 135 F.4th 1056, 1069 (6th Cir. 2025) (citation omitted); *see Ondo v. City of Cleveland*, 795 F.3d 597, 604 (6th Cir. 2015). The district court here exercised that broad discretion to accept a filing containing publicly available docket entries that directly impeached Winfrey's testimony in a dispute that largely turned on credibility. Winfrey argues that the local rules guaranteed him 14 days to respond, but "[t]he interpretation and application of local rules are matters within the district court's discretion." *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (citation omitted). Winfrey suggests that these supposed errors reached a constitutional level because he was denied any meaningful opportunity to respond to the brief. But he fails to explain why the hearing two days later—during which he had the opportunity to produce evidence and cross-examine witnesses—was not sufficient. *See United States v. Jamieson*, 427 F.3d 394, 407 (6th Cir. 2005). Nor, it's worth noting, did Winfrey offer any rebuttal evidence to the credibility brief when he sought the district court's reconsideration nearly a month after the hearing.

*Second*, Winfrey objects to a clarifying question the district court asked during closing argument. When Steiner and Harbison's counsel stated that there was "no apparent meeting of the

minds" and moved on to quantum meruit, the district court interjected: "[A]re you conceding there was no meeting of the minds and, therefore, we must go to quantum meruit? Or are you saying you want me to make a credibility determination that the agreement was $700 an hour[?]" Oct. 22 Hr'g Tr., R.343, PageID 8651-52. Winfrey characterizes that question as the court rescuing counsel from a dipositive concession and supplying a new theory of the case. The record belies that portrayal. The hourly-rate agreement had been Harbison and Steiner's position throughout the fee dispute, up to and including counsel's own statements just moments before. Fairly read, the question was a neutral effort to clarify apparent inconsistency. Even in criminal trials, a district court is "not a mere moderator," *Craddock v. FedEx Corp. Servs., Inc.*, 102 F.4th 832, 841 (6th Cir. 2024) (quoting *Quercia v. United States*, 289 U.S. 466, 469 (1933)), but has considerable discretion to "interject [itself] into the trial, speak to counsel, and question witnesses in order to clear up confusion," *United States v. Powers*, 500 F.3d 500, 511 (6th Cir. 2007). That rule follows with greater force when the district court itself serves as a factfinder in a civil evidentiary hearing. Here, the district court's question was "neutral, unbiased," and consistent with its practice throughout both hearings, during which it routinely stepped in to clarify witness testimony on both sides. *Powers*, 500 F.3d at 512. The district court's effort to obtain clarity about a disputed position was not procedural error.

IV

Steiner and Harbison filed a motion for appellate sanctions against Winfrey for prosecuting a frivolous appeal under Rule 38 of the Federal Rules of Appellate Procedure, 28 U.S.C. § 1912, and 28 U.S.C. § 1927. But not every weak appeal is frivolous. Because this appeal does not meet the legal standards of a frivolous appeal, we deny the motion for appellate sanctions. *See Larry E. Parrish. P.C. v. Bennett*, 989 F.3d 452, 457-58 (6th Cir. 2021).

\*　　\*　　\*

We affirm the district court's award of attorneys' fees to Winfrey and deny Harbison and Steiner's motion for appellate sanctions.